THOMAS A. WOODS (SB #210050)
thomas.woods@stoel.com
MATTHEW T. STRUHAR (SB #293973)
matt.struhar@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: (916) 447-0700
Facsimile: (916) 447-4781

Attorneys for Defendant erroneously named
"CALIFORNIA CHECK CASHING STORES"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLEY MOORE,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CHECK CASHING STORES,<br><br>Defendant. | CASE NO. 5:17-CV-02937-NC<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER FOR ARBITRATION** |

**STIPULATION**

Plaintiff Kelley Moore ("Plaintiff"), and Defendant erroneously named "California Check Cashing Stores" ("Defendant"), by and through their respective undersigned counsel (hereinafter collectively "Parties"), stipulate as follows:

1. Pursuant to the Parties' binding written agreement entered into on February 3, 2017, the controversies existing between the Parties that have been or could be asserted in this action will be resolved through binding contractual arbitration. That agreement is attached as **Exhibit A**.

2. The Parties stipulate to stay the trial court proceedings pending completion of the arbitration.

3. The Parties request that the Court retain jurisdiction for a reasonable amount of time after the completion of the arbitration for purposes of enforcing the arbitrator's award.

Respectfully submitted,

DATED: September 20, 2017

STOEL RIVES LLP

By: /s/ Thomas A. Woods
THOMAS A. WOODS
MATTHEW T. STRUHAR
Attorney for Defendant erroneously named "CALIFORNIA CHECK CASHING STORES, INC."

DATED: September 20, 2017

SAGARIA LAW, P.C.

By: /s/ Scott Johnson
SCOTT JOHNSON
Attorney for Plaintiff
KELLEY MOORE

**ATTESTATION OF SIGNATURE**

I attest under penalty of perjury under the laws of the United States of America that I have received the concurrence in the filing of this document from the listed signatories.

DATED: September 20, 2017

/s/ Thomas A. Woods
THOMAS A. WOODS

[~~PROPOSED~~] ORDER

Good cause appearing, based on the Stipulation by and between Plaintiff Kelley Moore and Defendant erroneously named "California Check Cashing Stores" (collectively, the "Parties"), the Court hereby ORDERS that the Parties arbitrate the controversies existing between them, and that the action be stayed pending completion of the arbitration. The Court will retain jurisdiction over this matter for a reasonable period of time after completion of the arbitration for purposes of enforcing the arbitrator's award. The Clerk of Court shall close this case for administrative purposes.

**IT IS SO ORDERED.**

Dated: September 20, 2017

NATHANAEL M. COUSINS
UNITED STATES MA[illegible]DGE



# EXHIBIT A

Loan No.# 40294

# CALIFORNIA CHECK CASHING STORES, LLC.

## Deferred Deposit Transaction Agreement & Disclosure Statement

Licensed by State of California
Transactions subject to CA law

**Today's Date:** 02/03/2017

Customer Name: MOORE, KELLEY M

Address: 8925 WOODMAN WAY

City: SACRAMENTO State: CA Zip: 95826

**Licensee**
**California Check Cashing Stores, LLC**
9205 FOLSOM BLVD #A
SACRAMENTO, CA 95826
Phone: (916)368-6600

**Federal Truth in Lending Disclosures**

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **Amount Financed** The amount of credit provided to you. | **Total of Payments** The amount you will have paid after making all scheduled payments. |
|---|---|---|---|
| **238.56%** | **$45.00** | **$255.00** | **$300.00** |

**Check No.#** 003528 **Amount:** $300.00 **Account:** 0076023090

**Payment Schedule: One payment of $** 300.00 **due on** 03/02/2017 (Payment Due Date)

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty, nor will you receive a refund of any part of the Finance Charge.

**Security: None**

See the terms below and on the following pages for any additional information about nonpayment, default and prepayment penalties.

------------------

**Itemization of Amount Financed:**

1. Amount paid directly to you: $255.00 2. Amount paid on account no. N/A with us: $0.00

Throughout this Deferred Deposit Transaction Agreement & Disclosure Statement ("Agreement"), California Check Cashing Stores, LLC, is referred to as "Lender," "we" and "us," and each Customer who signs below is referred to as "Borrower" or "you." "Loan" means the deferred deposit transaction governed by this Agreement. "Account" means the deposit account on which the Check you give us (described above) is drawn. "Bank" means the depository institution that holds your Account. The Truth in Lending Disclosures are part of this Agreement.

**DISCLOSURES UNDER THE CALIFORNIA DEFERRED DEPOSIT TRANSACTION LAW**

Information about the charges for your deferred deposit transaction is set forth above. A fee of $15 may be charged if the Check you give us is returned for any reason or if electronic transfer is rejected. You cannot be criminally prosecuted or threatened with criminal prosecution for purposes of collecting a deferred deposit obligation. We may not accept any collateral in connection with a deferred deposit transaction. This is a deferred deposit transaction made pursuant to Cal. Financial Code section 23035. This transaction is not subject to Cal. Civil Code section 1719, and you cannot be required to pay treble damages if your Check does not clear. The Department of Business Oversight toll-free number for receiving calls concerning consumer complaints and concerns is 1-866-ASK-CORP (1-866-275-2677).

By signing this agreement below you acknowledge that you have read, understand, and agree to all terms and conditions of this Agreement including its Agreement to Arbitrate Disputes, and acknowledge you have been provided a copy of the Agreement and in addition that you have also been provided a copy of the Privacy Policy, either with this Agreement or within a year of this Agreement. You further attest to your receipt of all the Notices herein and acknowledge that this Agreement contains all the terms of the Agreement and that no oral representations or promises other than those contained in the Agreement have been made.

**If you are not sure that you fully understand the transaction, please take time to review this Agreement and Disclosure or ask a customer service representative to answer any questions you may have.**

X ______________________ 02/03/2017
Borrower's Signature Date

X ______________________ 02/03/2017
California Check Cashing Stores, LLC Date
Customer Service Representative

**SEE IMPORTANT TERMS AND CONDITIONS, AND AGREEMENT TO ARBITRATE DISPUTES, ON THE FOLLOWING PAGES.**

CA-rev 1/10/2017

## ADDITIONAL TERMS AND CONDITIONS OF AGREEMENT- READ CAREFULLY

**DEFERRED DEPOSIT:** (a) You agree to give us your check identified above in an amount equal to "the Total of Payments" as set forth in the above Disclosures. You acknowledge we will deposit your Check on the above stated Payment Due Date. We may truncate the Check or use other commercially reasonable means to effect deposit of the Check.

(b) In lieu of depositing the Check, at our sole discretion, you authorize us to electronically debit your Account on the Payment Due Date. This authority shall remain in full force and effect until we and the Bank have received written notification from you of termination of such authorization in such time and manner as to afford us and the Bank a reasonable opportunity to act on it. You understand that you may cancel this electronic debit repayment authorization by providing written notice to us at least 5 business days prior to the Payment Due Date. You further understand that cancelling this authorization does not relieve you of the obligation to pay the Loan in full. ________ (Initials)

(c) Regardless of whether you authorize electronic debit/credit entries to your Account or choose to utilize a paper Check, you understand and agree that the term "Check" in this Agreement shall refer to either a paper check or to an electronic debit/credit entry, as appropriate. You agree (1) to deposit sufficient funds to cover the Loan in the Account on or before the Payment Due Date; (2) not to stop payment on the Check or take any other action that would prevent your Bank from paying the Check on or after the Payment Due Date; (3) that any changes to the terms of this Agreement must be in writing signed by you and us; (4) we cannot make and have not made the Loan contingent upon your obtaining any other product or service from us or anyone else; and (5) that our fee is an add-on finance charge which is fully earned as of the date of this Agreement.

**CANCELING YOUR LOAN:** You may cancel this Loan without paying the Finance Charge. To do so you must notify us and return all amounts we have given you under this Agreement no later than the end of the next business day following the date you signed this Agreement, You also understand that to cancel the loan you must return the money you have been given in cash, cashier's check or money order. If we receive your payment by that time, we will return your Check and cancel your Loan.

**NO COLLATERAL:** We are not allowed to accept any collateral in connection with a deferred deposit transaction. Therefore, this Agreement is not secured by any collateral other than any security interest in the Check that may arise by operation of law.

**REPRESENTATIONS AND WARRANTIES:** You represent and warrant to us that (a) you are at least 18 years of age and otherwise have the legal capacity to enter into this Agreement; (b) you also warrant that the information that you supplied to us for this Agreement is accurate, and that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under the United States Bankruptcy Code; (c) you do not currently have an outstanding deferred deposit transaction with us; and (d) at the time you delivered the Check to us, there were no blank numbers, amounts, or dates on the Check.

**CUSTOMER COMMUNICATIONS:** By your signature above, you expressly consent to be contacted by us, our affiliates, or anyone calling on our behalf for any and all purposes, at any telephone number, or physical or electronic address you provide or at which you may be reached. You agree we may contact you in any way, including calls using prerecorded messages or artificial voice, and calls and messages delivered using auto telephone dialing system or an automatic texting system. Automated messages may be played when the telephone is answered, whether by you or someone else. In the event that a customer service representative calls, he or she may also leave a message on your answering machine, voice mail, or send one via text.

You consent to receive calls and messages (including prerecorded and artificial voice and autodialed) from us and our affiliates at the specific number(s) you have provided to us, or numbers we can reasonably associate with your account (through skip trace, caller ID capture or other means), with information or questions about your loan with us. You certify, warrant and represent that the telephone numbers that you have provided to us are your numbers and not someone else's. You represent that you are permitted to receive calls at each of the telephone numbers you have provided to us. You agree to alert us in writing whenever you stop using a particular telephone number.

You agree that for purposes of your loan, we must be able to reach you. You agree that you will not and cannot revoke this consent to call, text, or email about your existing loan. The only exception is a revocation made through a valid "cease and desist" letter under applicable consumer protection laws which you have directed to the following address: California Check Cashing Stores, LLC, Attn: Opt-Out, 6785 Bobcat Way, Suite 200, Dublin OH 43016. None of our employees are authorized to receive a verbal revocation of your consent or authorization. You further warrant to us that you have obtained the express permission of any reference to provide his or her telephone number to us as a reference number and that the reference has agreed that we may call through any means and leave messages. You also authorize us to acquire location information about you from those references or employers that you have provided to us.

**TELEMARKETING CALLS: You agree that we and our affiliates may call or text you at the numbers and addresses you have provided for purposes of describing goods and services that may be of interest to you, offered by us, our affiliates and/or third parties. You agree these calls and text messages may be made using an automatic dialing or technology and/or involve prerecorded and/or artificial voice messaging. Your consent will be effective even if the number you have provided is registered on any state or federal Do-Not-Call (DNC) list. This consent for telemarketing calls shall remain in effect until you revoke it. Your consent to telemarketing calls may be revoked by informing the telemarketing representative, by sending written notice to us at: California Check Cashing Stores, LLC, Attn: Opt-Out, 6785 Bobcat Way, Dublin Ohio 43016, or any other method which ensures we receive the revocation.**

**Your consent to telemarketing calls is not a condition of obtaining your loan. ________(Initial to Consent).**

**CALL RECORDING AND MONITORING:** You consent to the recording and monitoring, for quality assurance, training, risk management and/or collection purposes, of any call that you place with us (or our affiliates) or that we (or our affiliates) place to you.

**DEFAULT AND COLLECTION:** Time is of the essence under this Agreement. You will be in default under this Agreement if (a) you fail to pay the full amount of the Loan when due; (b) you fail to keep any of your promises under this Agreement; or (c) any representation or information you give us is false or misleading. You understand and agree that if, for any reason, you are in default under this Agreement, we may, after waiting any prescribed time in applicable law, pursue all available legal and equitable remedies against you to collect the amount you owe us. In the event the Check or an electronic debit is returned unpaid for any reason, you agree (a) to pay us a returned check charge of $15, and (b) that we may re-present the Check in paper form or electronically and you authorize us to effect a separate, one-time payment authorization for this $15 returned check fee by electronic debit, draft or payment

instrument such as a remotely created check or payment order on your bank account identified on the check. We further reserve the right, in the event of Default, to require you to send us payment in the form of a cashier's check to the address we designate and/or if our effort to obtain payment through presentment is unsuccessful, you agree that we may convert your repayment authorization into a remotely created check or payment order – hereinafter a "demand draft." If we elect to convert your repayment authorization, the demand draft will be in an amount that does not exceed the total amount you owe us. We may then present the demand draft for payment against your account a total of twice, if necessary. If your bank pays the demand draft, your debt to us under this Agreement will be extinguished. . This authorization to create and submit demand drafts shall remain in full force and effect until we and the Bank have received written notification from you of termination of your payment authorization in such time and manner as to afford us and the Bank a reasonable opportunity to act on it. You understand that electronically re-presented checks will not be provided with your Bank statement, but that a copy of such a check may be obtained by contacting the Bank. If at any time when you owe us money you: present any check(s) to us for negotiation, we may apply the amount of such check(s), less applicable check cashing fees, to the amount you owe us. "Amounts you owe us" include all unpaid amounts, and any costs and fees we incur and are lawfully entitled to recover in connection with this Agreement. If you are in default under this Agreement, you authorize us to call you at work or home, or at other numbers listed in your application, to leave a message with a person or a voice mail service stating our name and phone number, to write to you at home, and to acquire location information about you from personal contacts on your application. You cannot be criminally prosecuted or threatened with criminal prosecution for purposes of collecting the Loan under this Agreement.

**NOTICES; CREDIT REPORTING:** We may make inquiries concerning your credit history and standing, and may report information concerning your performance under this Agreement to credit reporting agencies. Any notice that we are required to provide under this Agreement or applicable law will be deemed reasonable if sent to you at your address set forth above via First Class Mail. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**CUSTOMER NOTICE:** A single payday advance is typically for two to four weeks. However, borrowers often use these loans over a period of months, which can be expensive. Payday advances are not recommended as long-term financial solutions.

**GOVERNING LAW; SEVERABILITY:** Except as is otherwise provided in the Agreement to Arbitrate Disputes below, this Agreement is governed by the laws of the state of California. If any provision of this Agreement is held to be unenforceable, the remainder of this Agreement shall remain in full force and effect.

**AGREEMENT TO ARBITRATE DISPUTES:**

***a. Dispute Resolution by Arbitration ("Arbitration Agreement"):*** Any and all claims, controversies, or disputes arising out of or related in any way to this Agreement shall be subject to binding arbitration under the Federal Arbitration Act. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. Sections 1-18. This Arbitration Agreement applies to, without limitation, (1) all issues concerning the transaction described above; (2) initial claims, counterclaims, cross-claims, and third-party claims, whether arising in law or equity, and whether based upon federal, state, or local law; contract; tort; fraud or other intentional tort; constitution, common law, or statute; (3) any issue as to whether any such claims, controversies, or disputes are subject to arbitration; (4) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "Related Third Parties"), including claims for money damages and/or equitable or injunctive relief; and (5) any claims, controversies, or disputes that would otherwise be subject to class actions. This means that all claims, controversies or disputes that are the subject of class actions will also be subject to binding arbitration under the FAA and this Arbitration Agreement. **THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU OR US TO SERVE AS A PRIVATE ATTORNEY GENERAL, AS A REPRESENTATIVE, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

***b. Consent to Arbitration:*** You and we understand and agree that you and we are choosing arbitration rather than litigation to resolve disputes. You and we understand that you and we have the right to litigate disputes but that you and we prefer to do so through arbitration. In arbitration, you may choose to have a hearing and be represented by counsel. **THEREFORE, YOU UNDERSTAND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, YOU VOLUNTARILY AND KNOWINGLY:**

- **WAIVE ANY RIGHTS TO HAVE A TRIAL BY JURY TO RESOLVE ANY CLAIM OR DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
- **WAIVE YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS COURT, RESOLVE ANY CLAIM OR DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; AND**
- **WAIVE YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

***c. Procedure for Arbitration:*** Any claimant under this Arbitration Agreement must first submit to the other party a written notice of the claimant's claim against or dispute with the other party. That notice must include an explanation of the claim and a statement of the claimant's request for resolution. The party receiving the claim or dispute shall then be entitled to a period of thirty (30) days to cure that claim or dispute. If the parties are unable to resolve the claim or dispute within this 30-day period, then the claim or dispute shall be resolved by arbitration. Arbitration may be heard, at the claimant's election, by the American Arbitration Association (the "AAA"), the Judicial Alternatives and Mediation Service ("JAMS"), or any other arbitration forum as both parties may agree, and shall be conducted under the consumer rules of the arbitration forum selected. If you have any questions concerning the AAA or would like to obtain a copy of the AAA arbitration rules, you may call 1(800) 778-7879 or visit the AAA's web site at: www.adr.org. If you have any questions concerning the JAMS or would like to obtain a copy of the JAMS arbitration rules, you may call 1(800) 352-5267 or visit their web site at: www.jamsadr.com. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitation, and shall honor all claims of privilege recognized by law. The Arbitration shall take place in the federal judicial district of your residence. Subject to *Section f* below, each party, you and we, shall bear our own costs and expenses, including attorneys' fees incurred with respect to the arbitration. However, if due to circumstances relating to the dispute (including, among other things, the size and nature of the dispute, the nature of the services that we have provided you, and your ability to pay) it would be unfair or burdensome for you to pay the arbitration filing fees, we will advance the initial filing, administration, and hearing fees required by the arbitrator, who will ultimately decide who will be responsible for paying those fees.

In allocating those fees the arbitrator shall consider whether one party or the other acted frivolously or contrary to this Arbitration Agreement by requiring the other party to compel arbitration.

*d.* ***Interpretation of this Arbitration Agreement:*** Any dispute as to the validity of the portion of this Arbitration Agreement that prohibits class arbitration shall be a matter for resolution by a court and not by the arbitrator; although the arbitrator shall have the authority to resolve all other questions about the validity of the remaining portions of the Agreement. In the event that the court deems the portion of this Arbitration Agreement that prohibits class arbitration to be unenforceable, then the ensuing class action shall be heard by the court and not by the arbitrator.

*e.* ***Statutes of Limitations:*** All statutes of limitations that are applicable to any claim or dispute shall apply to any arbitration between you and us.

*f.* ***Attorneys' Fees:*** Except in those cases where an award of attorney's fees is required by statute, the arbitrator may, but is not required to, award reasonable attorneys' fees to the prevailing party if allowed by statute or applicable law.

*g.* ***Enforcement of Award:*** The award of the arbitrator shall be binding and final after fifteen (15) days have passed and judgment upon the arbitrator's award may thereafter be entered in any court having jurisdiction.

*h.* ***Appeal Procedure:*** Within fifteen (15) days after an award by the arbitrator, any party may appeal the award by requesting in writing a new arbitration before a panel of three neutral arbitrators designated by the same arbitration service. The decision of the panel of three neutral arbitrators will be immediately binding and final.

*i.* ***Small Claims Court:*** Notwithstanding any other provision of this Arbitration Agreement, either you or we shall retain the right to seek adjudication in Small Claims Court of any matter within its jurisdiction. Any matter not within the Small Claims Court's jurisdiction shall be resolved by arbitration as provided above. Any appeal from a Small Claims Court judgment shall be conducted at the appellant's option either (a) in accordance with the provisions of Sections 116.710 to 116.795 of the California Code of Civil Procedure, or (b) in accordance with Section *h* of this Arbitration Agreement.

*j.* ***Opt out Right:*** You may choose to opt out of and not be subject to this Arbitration Agreement by doing any of the following: (1) In place of signing this Arbitration Agreement, writing "Opt Out", or (2) Sending or delivering a written notice stating that you wish to opt out of Arbitration. This notice must be postmarked no later than twenty (20) calendar days after you sign this Agreement and must be mailed to: **California Check Cashing Stores, LLC, 6785 Bobcat Way, Suite 200, Dublin, OH 43016, Attention: Arbitration Opt-Out.**

*k.* ***Survival and Binding Effect of Arbitration Provision***: This Arbitration Provision supersedes any and all prior Arbitration Provisions between you and us and shall survive satisfaction of your contractual obligations and termination of this Agreement. This Arbitration Provision survives any cancellation by payment, termination, amendment, expiration or performance of any transaction between you and us and continues in full and effect unless you and we otherwise agree in writing. This Arbitration provision binds the heirs, successors, and assigns -including any bankruptcy trustee- of both of us.

*l.* ***Counterparts:*** This Arbitration Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which together shall be deemed to be one instrument.

**ARBITRATION PROVISION REVIEWED AND AGREED:**

**Borrower's Signature: X** ______________________ **Date:** 02/03/2017

**Licensee's Signature: X** ______________________ **Date:** 02/03/2017
California Check Cashing Stores, LLC
Customer Service Representative

By signing this agreement below you acknowledge that you have read, understand, and agree to all terms and conditions of this Agreement including its Customer Notice and Agreement to Arbitrate Disputes, and acknowledge you have been provided a copy of the Agreement and in addition that you have also been provided a copy of the Privacy Policy, either with this Agreement or within a year of this Agreement. You further attest to your receipt of all the Notices herein and acknowledge that this Agreement contains all the terms of the Agreement and that no oral representations or promises other than those contained in the Agreement have been made.

**If you are not sure that you fully understand the transaction, please take time to review this Agreement and Disclosure or ask a customer service representative to answer any questions you may have.**

X______________________ 02/03/2017
Customer Signature Date

X______________________ 02/03/2017
Licensee's Signature Date
California Check Cashing Stores, LLC
Customer Service Representative

I HEREBY RESCIND THIS DEFERRED DEPOSIT TRANSACTION AGREEMENT AND HAVE RECEIVED MY ORIGINAL CHECK. I UNDERSTAND THAT I MAY NOT RECEIVE ANOTHER DEFERRED DEPOSIT TRANSACTION UNTIL THE NEXT BUSINESS DAY.

Customer Signature______________________ Licensee's Signature______________________

Printed Name______________________ Printed Name______________________

Date:______________________ Date & Time______________________

# COVERED BORROWER IDENTIFICATION STATEMENT

## Declaración de Identificación Cubierta Por el Prestatario

Federal law provides important protections to active duty Members of the Armed Forces and their dependents. To ensure that these protections are provided to eligible applicants, we require you to answer the following questions:

La Ley Federal provee protecciones importantes a los miembros activos del Servicio Militar de las Fuerzas Armadas y sus dependientes. Para asegurar que estas protecciones sean proveídas a solicitantes elegibles, nosotros le requerimos contestar las siguientes preguntas:

**INITIAL ONLY ONE**

☐ **I AM NOT** a regular or reserve member of the Armed Forces (Army, Navy, Marine Corps, Air Force or Coast Guard) serving on active duty under a call or order that does not specify a period of 30 days or fewer (or a dependent of such a member.)

☐ **I AM** a regular or reserve member of the Armed Forces (Army, Navy, Marine Corps, Air Force or Coast Guard) on active duty under a call or order that does not specify a period of 30 days or fewer.

☐ **I AM** a dependent of a member of the Armed Forces on active duty as described above, because I am the member's spouse, the member's child under the age of eighteen years old, or I am an individual for whom the member provided more than one-half of my financial support for 180 days immediately preceding today's date.

**INICIALES SOLO UNO**

☐ **YO NO SOY** un miembro activo o de la reserva de las Fuerzas Armadas (Army, Navy, Marine Corps, Air Force o Coast Guard) en el servicio militar activo bajo llamado u orden que no especifica un period de 30 dias o menos (o un dependiente de miembro de tal.)

☐ **YO SOY** un miembro activo o de la reserva de las Fuerzas Armadas (Army, Navy, Marine Corps, Air Force o Coast Guard) en el servicio militar bajo llamado u orden que no especifica un period de 30 dias o menos.

☐ **YO SOY** un dependiente de un miembro activo de las Fuerzas Armadas en el servicio militar como se describe más arriba, porque soy cónyugue del miembro, el hijo(a) menor de 18 años del miembro o soy un individuo al cual el miembro proveyó mas de la mitad de mi apoyo financiero durante 180 dias inmediatamente antes de la fecha actual.

Customer Signature/Firma del Cliente

2-3-17
Date/Fecha

*Warning: It is important to complete this form accurately. Knowingly making a false statement on a credit application is a crime.*

*Advertencia: es importante completar este formato de una manera precisa. Hacer una declaración falsa deliberadamente en una aplicación de crédito es un crimen.*

Rev. 10/2015

Department of Defense Manpower Data Center

Results as of : Feb-03-2017 07:56:05 PM

MLA 2.0

Status Report
Pursuant to Military Lending Act

SSN: XXX-XX-9738

Birth Date: Oct-XX-1975

Last Name: MOORE

First Name: KELLEY

Middle Name: M

Status As Of: Feb-03-2017

| Status |
| --- |
| Based on the information you provided DMDC does not possess information indicating that the individual is either on active duty for more than 30 days or a family member of a service member on active duty for more than 30 days based on the Status Inquiry Date. |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the Status Inquiry Date as to the following branches: Army, Navy, Marine Corps, Air Force, and Coast Guard.

Mary M. Snavely-Dixon

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

This inquiry system has been designed to support identification of borrowers covered by 32 C.F.R. Part 232, which legally protects covered military personnel and their family members from excessive interest rates. This Federal regulation, which implements 10 U.S.C. 987, defines covered borrowers as: (1) A regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or less, or such a member serving on Active Guard and Reserve duty as that term is defined in 10 U.S.C. 101(d)(6), (2) the member's spouse, (3) the member's child defined in 38 USC 101(4), or (4) an individual for whom the member provided more than one-half of the individual's support for 180 days immediately preceding an extension of consumer credit covered by 32 C.F.R. Part 232.

This inquiry system checks the enrollment of individuals in the centralized database of identity, military medical eligibility and enrollment, and benefits verification data on members of the DoD Components, members of the Uniformed Services, and other personnel as designated by the Department of Defense, and their eligible family members (called the Defense Enrollment and Eligibility Reporting System (DEERS) database).

The Defense Manpower Data Center (DMDC) is the Department of Defense organization that maintains the DEERS database. The data in DEERS is sent to DMDC from the Uniformed Services and DoD Components. The data is as current as the information received. The DEERS database can consistently identify most individuals included in the definition of covered borrowers with the exception of (4) above: an individual for whom the member provided more than one-half of the individual's support for 180 days immediately preceding an extension of consumer credit covered by 32 C.F.R. Part 232. Some covered borrowers in this category may not be included in the database.

This certificate was provided based on information provided by the requester. Providing an erroneous last name or SSN or date of birth will cause an erroneous certificate to be provided.

Certificate ID: H4CF2C43S0AERE0

Kelley M. Moore
8925 Woodman Way
Sacramento, CA 95826

90-7626/3211

3528

3-2- 20 17

Pay to the Order of California Check Cashing Stores, LLC $ 300 —

Three hundred dollars & 00/100 Dollars

THE GOLDEN 1 CREDIT UNION
(877) 465-3361
WWW.GOLDEN1.COM

For

⑆321175261⑆ 00760230901⑈ 3528

<F02 - 684-FOLSOM> Enter Transactions <08/30/2017>
Cust ID 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 Trans # | DL No CA A9883864 10/27/19
Customer Check/Deferred History - MOORE, KELLEY M
Check Maker Number Trn Date Chk Date Amount St Tp S RC Sts
0 Rtn Checks .00 Net Due 108 Visits .00 Fees
Deferred Deposits:

| St | Sts | Check | Amount | Trn Date | Dep Date | Paid | Pkup |
|---|---|---|---|---|---|---|---|
| F0A | C | 003528 | 300.00 | 02/03/17 | 03/06/17 | +4 | No |
| F02 | C | 003527 | 300.00 | 01/19/17 | 02/03/17 | +1 | Yes |
| F02 | C | 003502 | 300.00 | 08/05/16 | 09/07/16 | +5 | No |
| F0A | C | 003501 | 235.29 | 06/21/16 | 07/01/16 | | Yes |
| F02 | C | 003500 | 300.00 | 05/24/16 | 06/03/16 | +1 | No |
| F0C | C | 002022 | 300.00 | 02/06/16 | 03/01/16 | -1 | Yes |
| F0C | C | 002014 | 300.00 | 09/08/15 | 09/30/15 | -2 | Yes |
| F0B | C | 002011 | 235.29 | 08/17/15 | 09/02/15 | | Yes |
| F0C | C | 001211 | 235.29 | 07/31/13 | 08/28/13 | -2 | Yes |
| F0B | C | 001208 | 300.00 | 07/09/13 | 07/31/13 | -2 | Yes |
| F0B | C | 001201 | 300.00 | 05/31/13 | 06/12/13 | -19 | Yes |
| F02 | C | 001134 | 300.00 | 04/30/13 | 05/30/13 | -1 | Yes |
| F0C | C | 001133 | 300.00 | 04/03/13 | 04/30/13 | -1 | Yes |
| F03 | C | 001129 | 300.00 | 03/26/13 | 04/01/13 | -1 | Yes |
| F0C | C | 001094 | 300.00 | 01/08/13 | 02/03/13 | +3 | No |

Verification
Press <PgDn> to proceed